IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GABRIEL AUGUSTO BERNAL )
MORENO, )
        Plaintiff, )
)
v. ) 1:22CV458
)
KILOLO KIJAKAZI, )
Acting Commissioner of )
Social Security, )
)
        Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment on the pleadings.

## I. PROCEDURAL HISTORY

In 2020, Plaintiff filed applications for supplemental security income, alleging a disability onset date of December 4, 2009. (Tr. 186-91.)[1] The applications were denied initially and upon reconsideration. (Tr. 76-79, 91-93.) After a hearing, the ALJ issued a decision on October 19, 2021, in which he determined that Plaintiff was not disabled since June 1, 2020, the date the application was filed. (Tr. 15-53.) On April 26, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of review. (Tr. 1-5.)

---

[1] Transcript citations refer to the administrative record which was filed with Defendant's Answer. (Docket Entry 7.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established five-step sequential analysis to ascertain whether Plaintiff is disabled, which is set forth in 20 C.F.R. § 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since June 1, 2020, the application date. (Tr. 17.) The ALJ next found the following severe impairments at step two: depression and generalized anxiety disorder with panic attacks. (Tr. 17.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listing. (Tr. 17.) The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he could perform light work except that he

> has a reasoning level of "two", as defined by the Dictionary of
> Occupational Titles (DOT), and the capacity to engage in simple,

2

> routine, repetitive tasks in two-hour intervals. Occasionally, the claimant can have superficial interaction with the general public as well as occasional, direct interaction with co-workers provided it does not require working in tandem or in team. Additionally, he can have occasional, direct interaction with supervisors, and is limited to working in an environment in which there is little change in its structure. The claimant can perform low stress occupations not requiring him to complete a specific number of quotas on a defined timeline or requiring fast paced assembly-line work.

(Tr. 19.)

At the fourth step, the ALJ determined that Plaintiff, who was twenty years old on the date of the application, had no past relevant work. (Tr. 23.) Last, at step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform. (Tr. 23.) Consequently, the ALJ concluded that Plaintiff was not disabled. (Tr. 24.)

**IV. ISSUES AND ANALYSIS**

Plaintiff raises two objections. First, Plaintiff contends that, "[t]he ALJ fails to incorporate non-exertional limitations on the ability to stay on task where the ALJ first finds that Mr. Bernal Moreno was moderately impaired in the maintenance of concentration, persistence, or pace (CPP)." (Docket Entry 12 at 7-8.) Second, Plaintiff contends that, "[t]he ALJ errs by finding an RFC unsupported with substantial evidence. The ALJ ignored preponderant medical information in the record indicating that the claimant's functioning is more limited than was found in the RFC. Under these conditions, there is not enough relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The ALJ errs by relying on evidence that does not support the conclusions that the ALJ drew from it." (*Id.* at 10-11.) As explained below, these are not persuasive objections.

3

A. **Concentration, Persistence, or Pace**

First, Plaintiff contends that, "[t]he ALJ fails to incorporate non-exertional limitations on the ability to stay on task where the ALJ first finds that Mr. Bernal Moreno was moderately impaired in the maintenance of concentration, persistence, or pace (CPP)." (Docket Entry 12 at 7-8.) As explained in greater detail below, this argument is unpersuasive.

In *Mascio v. Colvin*, the Fourth Circuit Court of Appeals remanded because the hypothetical the ALJ posed to the vocational expert, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that the ALJ determined at step three that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

Beyond this, the Fourth Circuit has recently reiterated that *Mascio* "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration,

4

persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). In *Shinaberry*, the plaintiff argued that a limitation only to simple, routine, repetitive tasks did not sufficiently account for her moderate limitations in concentration, persistence, or pace, in violation of *Mascio*. 952 F.3d at 120-21. After discussing the plaintiff's mental limitations, and explaining the great weight given to the state agency psychological experts' and consultative psychologist's opinions, the ALJ stated that the "simple, routine, repetitive tasks" restriction "accounted" for Plaintiff's limitations. *Id.* at 121-22. The Fourth Circuit affirmed the ALJ's decision, holding that the ALJ "addressed [Plaintiff's mental limitations and] explained why the psychological evidence and [Plaintiff's] statements support [only] a mental limitation to simple, routine, repetitive tasks." *Id.* at 122.

In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *See Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015). More specifically,

> [a]n ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

*Tolbert v. Colvin*, No. 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (citing *Jones v. Colvin*, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)).

Here, the ALJ determined at step three that Plaintiff had moderate limitations in concentration, persistence, or pace. (Tr. 18.) Specifically, the ALJ reasoned that

5

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant testified that he had difficulty following directions and focusing as well as racing thoughts. However, it appears that when the claimant consistently took his medications that it helped to manage his symptoms.

(Tr. 19.) After finding that Plaintiff had moderate limitations in concentration, persistence, or pace, the ALJ determined that Plaintiff "has a reasoning level of "two", as defined by the Dictionary of Occupational Titles (DOT), and the capacity to engage in simple, routine, repetitive tasks in two-hour intervals. Occasionally, the claimant can have superficial interaction with the general public as well as occasional, direct interaction with co-workers provided it does not require working in tandem or in team. Additionally, he can have occasional, direct interaction with supervisors, and is limited to working in an environment in which there is little change in its structure. The claimant can perform low stress occupations not requiring him to complete a specific number of quotas on a defined timeline or requiring fast paced assembly-line work." (Tr. 19.) For the following reasons, the undersigned concludes that the ALJ adequately considered the entire record and explained why additional limitations were not needed to account for Plaintiff's moderate limitations in concentration, persistence, or pace.

More specifically, the ALJ discussed the nature of Plaintiff's treatment in detail, noting that Plaintiff had largely normal mental status examinations with several examinations noting "intact" memory and "good" concentration and attention. (Tr. 21, 755, 774, 777, 784, 787, 815, 817.) Likewise, the ALJ found the prior administrative medical findings of Drs. April Strobel-Muss and Sean Sayers (who concluded that Plaintiff could perform simple, routine, repetitive tasks in a low production environment) to be persuasive as these psychologists were

6

able to review the majority of Plaintiff's medical records and the limitations appeared to be consistent with the overall record as a whole. (Tr. 23, 60-63, 71-74.) The Fourth Circuit has endorsed a finding, based on medical opinions alone, that a claimant's moderate concentration, persistence, or pace difficulties would not interfere with her ability to perform simple, routine, and repetitive tasks. *See Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017) ("The opinions of these two doctors thus provided substantial support for the ALJ's finding that, despite Sizemore's overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to *stay on task* while performing 'simple one, two-step tasks,' as long as he was 'working in low stress non-production jobs with no public contact.'") (citing *Mascio*, 730 F.3d at 638). Additionally, decisions in this district have repeatedly found that a production pace limitation adequately accounts for moderate limitation in concentration, persistence, and pace. *See King v. Kijakazi*, No. 1:20CV1008, 2022 WL 837388, at *5 (M.D.N.C. Mar. 21, 2022) (collecting cases for the proposition that "decisions in this District have specifically concluded that such restrictions adequately account for moderate limitations in concentration, persistence, or pace").

And, unlike the decision in *Mascio*, "here the ALJ specifically considered Plaintiff's ability [for concentrating, persisting, or maintaining pace]." *See Owens v. Berryhill*, No. 1:17cv43, 2018 WL 851380, at *9 (M.D.N.C. Feb. 13, 2018) (citing *Sizemore*, 878 F.3d at 81). The ALJ in the instant matter accounted for the residual effects of Plaintiff's mental impairments, including Plaintiff's depression and anxiety, and explained why those impairments limited Plaintiff to (1) jobs with a reasoning level of "two," as defined by the DOT; (2) simple, routine, repetitive tasks in two-hour intervals; (3) superficial interaction with the general public; (4)

7

occasional, direct interaction with co-workers provided it does not require working in tandem or in team; (5) occasional, direct interaction with supervisors; (6) work in an environment where there is little change in its structure; and (7) low stress work not requiring him to complete a specific number of quotas on a defined timeline or requiring fast paced assembly-line work. (Tr. 19-23.) The ALJ's discussion of the evidence demonstrates that substantial evidence exists to support that the RFC for unskilled work (with other limitations) accounted for Plaintiff's moderate limitations in concentration, persistence, and pace.[2] (Tr. 19-23.)

B. **The RFC is supported by substantial evidence.**

Plaintiff next contends that "[t]he ALJ errs by finding an RFC unsupported with substantial evidence. The ALJ ignored preponderant medical information in the record indicating that the claimant's functioning is more limited than was found in the RFC. Under these conditions, there is not enough relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The ALJ errs by relying on evidence that does not support the conclusions that the ALJ drew from it." (Docket Entry 12 at 11-12.) Plaintiff more specifically asserts that the ALJ failed to adequately account for his marked limitations in interacting with others in the RFC and also failed to adequately consider whether Plaintiff needed a job coach. (*Id.* at 11-14.) As explained below, neither of these arguments is persuasive.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §

---

[2] None of Plaintiff's arguments to the contrary are persuasive. Plaintiff's brief (Docket Entry 12 at 8-10) (which describes this case as being "analogous" to *Mascio* (*id.* at 8)) ignores the significant limitations that the ALJ imposed here (beyond simple routine and repetitive tasks), and further ignores the opinions of the non-examining state agency psychologists (found persuasive by the ALJ), making this case significantly different than *Mascio*.

8

416.920; *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).") (internal citation omitted); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). An ALJ need not discuss every piece of evidence in making a determination. *See Reid v. Commisioner*, 769 F.3d 861, 865 (4th Cir. 2014). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017) (internal quotation marks and citations omitted). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

Moreover, as the Fourth Circuit Court of Appeals has explained, remand may be appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review[.]" *See Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) (citation omitted). For this Court to meaningfully review an ALJ's RFC assessment, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion." *Mascio*, 780 F.3d at 636 (citation omitted). The ALJ "must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d

9

686, 694 (4th Cir. 2018) (emphases and alteration in original) (internal quotation marks omitted). Otherwise, the court is "left to guess about how the ALJ arrived at his conclusions" and cannot meaningfully review them. *Mascio*, 780 F.3d at 637.

### i.     Marked Limitations in Interacting with Others

Plaintiff implies that because he has a marked limitation in interacting with others, that finding precludes him from all interactions with others. (Docket Entry 12 at 12.) This argument misconstrues the regulatory definition of a "marked" limitation, which is defined as having a seriously limited ability to function independently appropriately, effectively, and on a sustained basis. 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.00F.2.d. An "extreme" limitation is defined as being unable to function in an area independently, appropriately, effectively, and on a sustained basis. 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.00F.2.e.

Here, the ALJ did not find any "extreme" limitations. *See, e.g.*, *Tooley v. Colvin*, No. 3:14cv1840, 2015 WL 3866061, at *4 (M.D. Pa. June 23, 2015) (noting that Plaintiff cited no authority supporting his argument that a "marked limitation" in an area of social functioning meant the person was unable to function in that area). Based on his independent evaluation of the overall record evidence, the ALJ reasonably found that Plaintiff's mental impairments were very limiting, but not workpreclusive. Contrary to Plaintiff's argument, the ALJ's RFC finding more than adequately accounted for Plaintiff's marked limitations in interacting with others by limiting Plaintiff to work involving (1) superficial interaction with the general public; (2) occasional, direct interaction with co-workers provided it does not require working in

10

tandem or in team;[3] (3) occasional, direct interaction with supervisors; (4) work in an environment where there is little change in its structure; and (5) low stress work not requiring him to complete a specific number of quotas on a defined timeline or requiring fast paced assembly-line work. (Tr. 19-23.) Furthermore, the ALJ's limitation to unskilled work, which involves primarily working with things rather than with people, also accounts for the marked restriction in dealing with the public. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.00(g).

The ALJ also adequately supported his conclusion that, despite serious deficits in the ability to interact with others, Plaintiff could still work by pointing out that during the alleged period of disability Plaintiff interacted with his family, took his driving test at the DMV, met a number of times with a job coach, and had a friend over to his house while his parents were on vacation. (Tr. 18, 21-22, 39, 44, 200, 775, 788, 815, 818.) The findings were also consistent with the prior administrative medical findings of Drs. Strobel-Nuss and Sayers, which the ALJ found persuasive, that Plaintiff could perform in a low production environment with little public contact. (Tr. 23, 60, 71.) These findings were consistent with Plaintiff's treatment records that showed he was polite and cooperative, had appropriate behavior, and he was interactive. (Tr. 695, 731, 755, 760, 764, 774, 777, 787, 815, 817, 824, 826, 828, 830, 833-34, 838.) His mood was better when he was spending a lot of time helping family around the

---

[3] The ALJ's bar of teams and tandem work added a significant, qualitative restriction to the coworker interaction limitation. *See Kearns v. Commissioner of Soc. Sec.*, No. 3:19CV1243, 2020 WL 2841707, at *12 (N.D. Ohio Feb. 3, 2020) (deeming "ALJ's limitation to no team or tandem tasks [ ] a qualitative limitation on social interaction"); *Collins v. Commissioner of Soc. Sec.*, No. 3:17CV2059, 2018 WL 7079486, at *6 (N.D. Ohio Dec. 7, 2018) (noting that "the ALJ restricted [the p]laintiff from 'team or tandem tasks,'" which constituted "a restriction on the quality of interpersonal contact").

house and doing odd jobs to help his parents out. (Tr. 826.) He reported that he felt more positive and connected after being more social with friends. (Tr. 760.)

Finally, the *Dictionary of Occupational Titles* ("DOT") codes for all three of the jobs the ALJ ultimately found Plaintiff able to perform contain a fifth digit (or "People" rating) of "8," cleaner (DOT #381.687-018), 1991 WL 673258; laundry worker (DOT #361.685- 018), 1991 WL 672987; and inspector hand packager (DOT #559.687-074), 1991 WL 683797. They are all described in the DOT as "People: 8 - Taking Instructions-Helping N - Not Significant" and "Talking" and "Hearing" as "Not Present – Activity or condition does not exist." *Id.* This "reflect[s] the lowest possible level of human interaction that exists in the labor force." *Keene v. Kijakazi*, No. 1:21CV289, 2022 WL 6175173, at \*6 (M.D.N.C. Oct. 7, 2022) (collecting cases).[4] Moreover, the vocational expert also noted that *even if* an individual with the same RFC as Plaintiff were limited to *no contact with the public*, this would not change the individual's ability to perform the three jobs cited above. (Tr. 47-48, 51.) Consequently, even if there was an error here (which is clearly not the case for the reasons set forth above) any error would be harmless. In the end, Plaintiff simply has not shown that the ALJ's significant interaction limitations in the RFC failed to account for his marked limitation in interacting with others.[5] For all these

---

[4] Plaintiff also asserts in passing that the ALJ erred by failing to define the term "superficial interaction" when limiting Plaintiff to "superficial interaction with the general public." (Tr. 19.) (Docket Entry 12 at 13.) Plaintiff does not cite any authority in support of an argument that the ALJ must define such terms in the RFC or any authority suggesting that this term is impermissibly vague. Nor has Plaintiff shown why the term "superficial" warrants explanation beyond its common, every day meaning. *See O'Brien v. Colvin*, No. 1:15CV00536, 2016 WL 2755459, at \*5 (M.D.N.C. May 11, 2016) (collecting cases).

[5] *See Hayes v. Kijakazi*, No. 1:21CV715, 2023 WL 22159, at \*2, 12-13 (M.D.N.C. Jan. 3, 2023) (concluding that the following RFC adequately accounted for marked limitations in social functioning: "[o]ccasionally, [plaintiff] can have superficial interaction with the general

12

reasons, Plaintiff has failed to demonstrate that the ALJ committed any error here, much less a prejudicial one. This objection has no merit.

## ii. Job Coaching

Plaintiff also contends that he "frequently relied upon his job coach, and some allowance in the RFC should have been made for such support." (Docket Entry 12 at 13.) He asserts further that "[w]hen ALJ's have found a prominent role for a job coach for a claimant, but does not account for the role in the RFC, courts have remanded for a new hearing." (*Id.* at 12 citing *Natalie C. v. Kijakazi*, No. 7:20-CV-423, 2021 WL 5149913, at *4 (W.D. Va. Nov. 4, 2021); *Humphries v. Commissioner*, 7:18CV00380, 2020 WL 1289538, at *5 (W.D. Va. Mar. 18, 2020).) This argument is unpersuasive.

First, there is no medical opinion in the record stating that Plaintiff requires job coaching. Therefore, there was no medical opinion on this issue in the record for the ALJ to evaluate as persuasive or unpersuasive on this issue. Second, Plaintiff did not allege at the hearing or in a function report that he needed job coaching in order to work. Therefore, the

---

public and occasionally may have direct interaction with coworkers in situations during which he is not required to work in teams or in tandem with them and can have occasional, direct interaction with supervisors. He is limited to working in environments in which there is little change in its structure and can perform low stress occupations, meant to include occupations not requiring [him] to produce a specific number of quotas on a defined timeline or to do fast pace assembly line work") (brackets in original) (Auld, M.J.), *adopted by* Slip Op. (M.D.N.C. Jan. 30, 2023) (Eagles, J.); *Juliana Marie M. v. Commissioner of Soc. Sec.*, No. 18CV1421, 2019 WL 6829044, at *10 (N.D.N.Y. Dec. 13, 2019) ("The fact that [the] plaintiff was found to have a marked limitation interacting with others does not conclusively demonstrate that she is unable to work, particularly given the fact that the ALJ limited plaintiff to work that does not require more than occasional interaction with the public and co-workers.") (quotation marks, initial brackets, and emphasis omitted).

13

ALJ was not required to evaluate any such allegation in the subjective complaints assessment conducted in the decision.

Third, there are a few scattered references to Plaintiff receiving job coaching in the record, consisting entirely of Plaintiff mentioning it in passing to his medical providers.[6] The record contains no reports or assessments from a job coach evaluating the services Plaintiff received or whether these services were necessary, successful, or unsuccessful. In any event, in his decision, the ALJ discussed most or all of the fleeting references in the record to Plaintiff's job coaching, which appears to have occurred around five times over a three-month period in 2021.[7] Noting in these notes indicates that Plaintiff needs a job coach as a workplace

---

[6] The references to job coaching in the record are as follows: On April 6, 2021, Plaintiff told his therapist that he was "planning on working with a job coach to secure employment." (Tr. 770.) On May 18, 2021, Plaintiff told his therapist that "he has been contacted by job coach and has plans to proceed this week." (Tr. 785.) On June 1, 2021, Plaintiff told his therapist he "completed job coaching experience but was vague about outcome and plans." (Tr. 788.) Plaintiff told his therapist on June 17, 2021, "Client met with job coach for initial session." (Tr. 818.) Plaintiff told his doctor on June 28, 2021 that "He is getting a job coach so this is going well." (Tr. 824.)

[7] In assessing the Paragraph B criteria of understanding, remembering or applying information; interacting with others; and adapting or managing oneself, the ALJ mentioned three times Plaintiff's ability to contact a job coach, meet with a job coach, work with a job coach, and fill out job applications. (Tr. 18.) Then, in assessing Plaintiff RFC, the ALJ noted that "By April 2021, he continued to work on his negative thoughts. He also stated that he was working with a job coach to secure employment." (Tr. 21, 770.) The ALJ further noted that "By May 2021, the claimant stated that he had been successful in managing his irritation with his peers online. He reported that he had been contacted by a job coach and plans to proceed this week." (Tr. 21, 785.) The ALJ next noted that in June 2021, "the claimant completed his job coaching experience but was vague about the outcome and his plans." (Tr. 21, 788.) Finally, the ALJ noted that during another visit in June 2021, Plaintiff "was able to meet with a job coach again, continue to complete applications for employment and schedule his next appointment with the DMV." (Tr. 22, 818.) Consequently, the ALJ thoroughly and adequately discussed the evidence of job coaching in the record.

14

accommodation, as is clear from the ALJ's discussion of them and from the ALJ's omission of any job coaching requirement in the RFC. The ALJ did all he was required to do here in discussing in detail the limited evidence on the record on this issue. *See, e.g.*, *Daniel H. v. Kijakazi*, No. 22 C 2793, 2023 WL 2539491, at *6 (N.D. Ill. Mar. 16, 2023) (rejecting claimant's argument that "the ALJ's decision must be overturned because she failed to address the plaintiff's need for job coaching services" where "[n]othing in the 'notes' from [job coaching] sessions depicts anything as dire as a need for the 'highly structured work setting'").[8]

Finally, the cases Plaintiff cites in support of this objection are factually inapposite, as both deal with records containing much more robust evidence of the need for job coaching *as well as* the ALJ's failure to adequately address it. *See Humphries v. Comm'r, Soc. Sec. Admin.*, No. 7:18CV00380, 2020 WL 1289538, at *5 (W.D. Va. Mar. 18, 2020) ("In the court's view, the difficulty with the Law Judge's assessment of plaintiff's RFC is that he failed to adequately address the evidence indicating that Mr. Humphries would need special supervision or assistance to sustain employment. The record reveals that Mr. Humphries required extensive vocational rehabilitation services as a result of his impairments, and the opinion evidence suggests that 'special supervision' may be necessary in a competitive work environment, either

---

[8] Later in his brief, Plaintiff cites a third "job coaching" case; however, that case, unlike this one, contained three medical opinions all finding that the claimant needed additional supervision while working. (Docket Entry 12 at 12); *see Bennett v. Berryhill*, No. 2:17CV520, 2019 WL 1104186, at *15 (E.D. Va. Feb. 15, 2019) ("Dr. Rhoad determined Plaintiff required extra supervision or a job coach to permit him to perform some type of simple and repetitive assignments. Patricia Bruner, Ph.D., and David Deaver, Ph.D., reviewed Plaintiff's medical records to assist in making a determination on Plaintiff's disability claims at the initial level and upon reconsideration, respectively. Dr. Bruner and Dr. Deaver both concluded that Plaintiff 'would have moderate limitations in his ability to work without some additional supervision.'") (internal citations omitted). As explained, there is no opinion evidence in this record stating that Plaintiff needs job coaching.

15

in the form of 'supported employment' services or a 'job coach."); *Natalie C. v. Kijakazi*, No. 7:20-CV-423, 2021 WL 5149913, at *4 (W.D. Va. Nov. 4, 2021) (describing a "gap[ ] in the ALJ's analysis that frustrate[s] meaningful review" because "the RFC assessment . . . does not appear to contemplate the role job coaches have played in Natalie's ability to work"). As demonstrated in the previous paragraphs, neither is the case in this matter. In light of all this, there was no more for the ALJ to do here that what he did. This objection has no merit.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 11) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be **GRANTED**, and the final decision of the Commissioner be upheld.

/s/ Joe L. Webster
United States Magistrate Judge

April 24, 2023
Durham, North Carolina